149 So.2d 101 (1963)
ARKANSAS FUEL OIL CORPORATION Plaintiff-Appellee,
v.
Emile M. WEBER et al., Defendants-Appellants.
No. 9842.
Court of Appeal of Louisiana, Second Circuit.
January 2, 1963.
Rehearing Denied February 7, 1963.
Certiorari Refused April 11, 1963.
*102 A. Leon Hebert, Emile M. Weber, Baton Rouge, Cook, Clark, Egan, Yancey & King, Wilkinson, Lewis, Madison & Woods, Shreveport, for appellants.
John W. Haygood, Shreveport, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
This action was instituted by plaintiff as the holder of funds representing the purchase of crude oil produced from a well located on an 80 acre unit comprising the North Half of the Northwest Quarter of Section 33, Township 18 North, Range 13 West, Bossier Parish, Louisiana. Plaintiff deposited the amount held in the custody of the Clerk of Court and prayed for citation of the numerous defendants representing adverse claimants to the fund and judgment relieving it from liability with respect to all amounts deposited.
Named as defendants were the Town of Bossier City, the Police Jury of Bossier Parish, the Hunter Company, Inc., and its predecessor, Hunter Land & Investment Company, Inc., Emile M. Weber, lessee of the Town of Bossier City, Joe M. Burnham, lessee of the Hunter Company, the widow and heirs of F. M. Browning, who was Burnham's co-lessee, the Louisiana & Arkansas Railway Company and numerous other parties who were assignees of interests from Burnham and Browning.
The property involved, with respect to the asserted adverse interests of the defendants, *103 was described as comprising four separate tracts of land. For reasons which we deem it unnecessary to set forth, since the effect is conceded by all parties to this appeal, one of the tracts of land has been eliminated from consideration, and the defendants, Town of Bossier City, Police Jury of Bossier Parish and Louisiana & Arkansas Railway Company have abandoned all claims to any rights involved in this suit, and, therefore, are not parties to this appeal.
The mineral interests involved underlie three separate tracts of land located in the 80 acre unitized tract in Section 33 as above set forth, which tracts may be briefly described as follows:
Tract 3, comprising all streets and alleys in the Northwest Quarter of Northwest Quarter, as shown by plat of Central Plaza Subdivision, recorded in Book 60, page 357 of the records of Bossier Parish, containing 10.423 acres.
Tract 5, comprising certain streets and portions of streets in the Northeast Quarter of Northwest Quarter situated in Central Plaza Subdivision, as per plat described supra, containing 3.734 acres.
Tract 6, embracing that portion of the Coushatta paved highway in the Northeast Quarter of Northwest Quarter, as shown on plat of Central Plaza Subdivision, containing 1.228 acres.
After trial, which consisted almost exclusively of the introduction of documentary evidence, there was judgment as to Tracts 3 and 5 recognizing the defendant, Emile Weber, as the owner of a valid oil, gas and mineral lease thereto; as to Tract 6, there was judgment recognizing the defendants Burnham, et als., as the owners of a valid oil, gas and mineral lease thereto. In addition to the adverse claims as to the ownership of the mineral interests in the properties involved, there was also presented the issue as to the apportionment of costs of drilling, completing and operating the producing oil and gas well known as Hunter No. 1, located on the 80 acre unit. In this connection the judgment specifically set forth an apportionment of the cost and charged the defendant, Weber, with his proportionate share thereof.
From this judgment all parties defendant have appealed from the portions thereof which adversely affect their claims.
Chronologically, the material facts may be outlined as follows:
(1). The Hunter interests became the owners of the subject property in 1907.
(2). By instrument of date May 17, 1926, duly filed and recorded June 19, 1926, in Conveyance Volume 80, page 386 of the Records of Bossier Parish, the Estate of S. S. Hunter, Inc., represented by S. D. Hunter, President, conveyed to the Parish of Bossier a strip of land 1,250 feet in length by 70 feet in width for use in the construction and maintenance of a public road. This is the property described as a portion of the Coushatta paved highway under Tract 6, supra.
(3). On May 30, 1931, the Hunter Land & Investment Company, record owners of the property, caused to be filed and recorded in the records of Bossier Parish a plat of Central Plaza, being a subdivision lying partially within and partially without the limits of the Town of Bossier City. This plat set forth in detail the block and lot descriptions of the subdivision, together with the names and locations of numerous streets and the locations of alleys, all as shown to be embraced within the subdivision. The plat contained the specific declaration:
"We hereby dedicate to public use the streets and alleys as shown above.
 Hunter Land & Investment Co.
 By S. D. Hunter, Pres.
 Owners"
*104 (4). On June 8, 1936, the Police Jury of Bossier Parish adopted Ordinance No. 45 revoking the dedication of certain streets and portions of streets as described in the Ordinance, lying within that part of Central Plaza Subdivision outside of the limits of the Town of Bossier City, which ordinance was recorded under date of April 23, 1937, in Volume 132, page 9 of the Conveyance Records of Bossier Parish.
(5). By Ordinance 236 of 1936 the Town of Bossier City revoked the dedication of all streets and alleys in Central Plaza Subdivision, which ordinance, however, was never recorded.

(6). By Ordinance 308 of 1944 the Town of Bossier City extended and enlarged its corporate limits to include that portion of Section 33 embracing the part of Central Plaza Subdivision which had previously been without the boundaries of the municipality.
(7). By Ordinance 201 of 1950 adopted on March 14th, the Bossier Parish Police Jury, upon the request of the Hunter Company, Inc., revoked, with some slight exceptions, the dedication of all the streets and alleys not previously included in its Ordinance No. 45 adopted in 1936.
(8). By instrument dated February 12, 1951, the Hunter Company, Inc., executed an oil, gas and mineral lease in favor of Joe M. Burnham and F. M. Browning, as lessees, covering:
"All that portion of the North Half of the Northwest Quarter (N½ of NW¼) of Section 33, Township 18 North, Range 13 West, owned by lessor."
(9). After compliance with statutory requirements and provisions, the State Mineral Board, for and on behalf of the Town of Bossier City, under date of May 11, 1951, executed an oil, gas and mineral lease in favor of Emile M. Weber, the successful bidder, covering all of the streets and alleys of the Town of Bossier City located in the North Half of the Northwest Quarter of Section 33, Township 18 North, Range 13 West, Bossier Parish, Louisiana. (A cash consideration of $2,000.00 was paid to the lessor, and, so far as the record discloses, this amount was received and has been retained by Bossier City).
(10). By ordinance 585, adopted February 14, 1956, the City of Bossier City, upon the request of "* * * all of the abutting property owners * * *," abandoned and revoked the dedication of all streets and alleys located in Central Plaza Subdivision, with certain minor exceptions noted therein.
We will attempt to briefly delineate the opposed contentions of the parties to this appeal. Defendant, Weber, claims the leasehold rights under the three tracts described by virtue of the lease from the State Mineral Board, acting for and on behalf of the Town of Bossier City. In support of this claim, Weber relies upon the principle that he was a bona fide lessor, relying upon the faith of the public records, and was not bound by the unrecorded revocation of the streets and alleys lying within the Central Plaza Subdivision. The defendant, Hunter, relies primarily upon its plea of prescription of ten years acquirendi causa as owner under a conveyance translative of title. It is also contended that Weber is not entitled to the protection under the doctrine of reliance upon the public records when such records reveal obvious adverse claims to the property. The numerous defendants claiming under the Burnham-Browning lease rely upon the defenses asserted by the Hunter Company.
The contention of the defendant, Weber, as above set forth, applies to all three tracts. With respect to Tract 6, which involves a portion of the Coushatta paved highway, the other defendants, Hunter, and those deriving from him, urge, first, that a servitude *105 limited to use for highway purposes does not effect a transfer of the fee title, and, second, that the Coushatta paved highway is not included as a part of the Central Plaza Subdivision.
To the issues presented, we now devote our consideration in the order set forth.
From the mere chronological recitals supra, certain conclusions with relationship to the contentions of the several parties are inescapable. Unquestionably, the defendant, Weber, is the lessee in good faith of the properties involved in Tracts 3 and 5, who purchased on the faith of the public records, and is, therefore, protected by the principle enunciated in the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100. More pertinent, and squarely upon the point involved in this case, is the opinion of Mr. Chief Justice Fournet in Martin v. Fuller, 214 La. 404, 37 So.2d 851, in which he declared:
"It is our opinion that until the revocation of the dedication of these roads, streets, and alleyways * * * is duly recorded as required by law, it cannot affect the rights of third parties. Clearly, therefore, when the plaintiffs purchased the lots described in their deed in accordance with the plat therein referred to showing that the property was traversed by the alleyway in question, they had the right to assume that until the contrary appeared on the public records, this alleyway was still dedicated to public use."
But, as above noted, it is contended by the Hunter defendants that Weber was not justified in relying on the faith of the public records, since the title to the streets and alleys involved in this case, on the face of the conveyance records, was suggestive of litigation and, therefore, demanded "the utmost inquiry." In support of this contention counsel primarily rely upon the authority of Wells v. Joseph, 234 La. 780, 101 So.2d 667.
We do not think this position is tenable. In the Wells case, after citing Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369, and Wise v. Watkins, 222 La. 493, 62 So.2d 653, the opinion of Mr. Justice Hawthorne made the following observation:
"An examination of the public records in the instant case revealed to the plaintiff that there were other claimants of title to the property, that the property stood of record in the names of other parties besides his vendors, and that he would have to resort to a law suit to establish his ownership. Under the Arnold and Wise cases, supra, these instruments of record were certainly sufficient to put a purchaser on inquiry as to the title, and if he did not avail himself of the means and facilities to obtain knowledge of the true facts, he is to be considered as having bought at his own risk and peril." (Emphasis supplied)
The record in the instant case establishes no facts even remotely comparable to those which existed in the Wells case. Counsel diligently argue that as a consequence of the closure of streets and alleys in a portion of the subdivision, effected by the Police Jury Ordinance 45 of 1936, which by reference to the plat of the subdivision indicated that the whole plan thereof was completely disrupted, any person dealing with the property should have been put upon notice that the streets and alleys in the subdivision area, which was within the limits of the municipality, would be subject to some alteration. We consider this argument to be unsubstantial and without legal support or practical merit. The mere fact that one governing body chooses to close certain public ways over which it has jurisdiction does not reasonably indicate that another public body has taken the same action. To require a search of the ordinances of a municipality over a period of some fifteen years, upon the basis of a mere conjecture that some action might *106 possibly have been taken which was not reflected by the public records, would impose an intolerable burden upon one who deals with property on the face of the public records and would have the effect of vitiating, almost to the point of absolute destruction, the principle established in McDuffie v. Walker.
Further, counsel argue that Weber should have been placed upon notice of some irregularity by reason of the Police Jury Ordinance 201 of 1950 purporting to close practically all of the streets and alleys within the Central Plaza Subdivision. This argument is answered and completely refuted by the then existing fact that the Police Jury had lost its jurisdiction over this subdivision by reason of the annexation by Bossier City, as set forth in (6) of the chronological exposition, supra.
Finally, it is urged that at the time Weber purchased the mineral lease from the Town of Bossier City through the State Mineral Board, the lease from Hunter to Burnham, covering the property in dispute, was already of record, and, therefore, was not only suggestive but indicative of litigation. The fallacy of this position is demonstrated by reference to the lease agreement from Hunter to Burnham and Browning set forth under (8) supra. It must be noted that the instrument expressly conveyed only that portion of the 80 acre tract "owned by lessor." Further reference to the lease itself shows that it contained a special provision under which the lessor agreed to refund to lessees the sum of $100.00 per acre for any shortage in acreage that might be determined by a final decision of a court of last resort, and that otherwise there was no warranty "* * * on the part of the lessor as to title or acreage or otherwise, and lessor's warranty is expressly so limited."
Not only, therefore, does the lease agreement from Hunter to Burnham and Browning fail to disclose any facts which would serve as a warning to a purchaser on the faith of the public records, but it actually discloses an uncertainty as to the title, and the extent thereof, in the lessor, and provides for restitution as between the lessor and lessee resulting from any failure of the lessor's title. It is only reasonable to conclude that the recitals in the lease which are above expressly noted, could and should not have affected a third party purchasing on the faith of the public records, but, on the contrary, would strongly indicate an outstanding title as to a portion of the tract conveyed, which, so far as the third party purchaser was concerned, was clearly evidenced by the unrevoked dedication of the streets and alleys of the subdivision within the municipal boundary.
Additionally, we think it relevant that the defendant, Burnham, was an unsuccessful bidder against Weber for the lease of the mineral interests owned by the Town of Bossier City. This fact adds weight to the conclusion that both Hunter and Burnham were uncertain as to the former's title to the entire tract and the cause of this uncertainty can be definitely traced and attributed to the outstanding and unrevoked (so far as disclosed by the records) dedication of the streets and alleys within the Central Plaza Subdivision.
Proceeding to what we regard as the more serious defense asserted by the Hunter defendants, that is, the plea of ten years acquisitive prescription, we note, first, that such a plea is appropriate and has not been considered by our jurisprudence to detract from the principle of McDuffie v. Walker. In other words, the right of a purchaser to rely upon the public records is qualified by the right of an adverse claimant to assert ownership acquired by prescription. We hold this conclusion to be well established. The case of Bernstine v. Leeper et al., 118 La. 1098, 43 So. 889, which was decided more than two years prior to the McDuffie v. Walker case, eliminated the lack of recordation of a conveyance as a factor affecting the plea of prescription. This principle was re-enunciated by the Supreme *107 Court in Cherami et al. v. Cantrelle et al., 174 La. 995, 142 So. 150, wherein the opinion quoted the court's syllabus in the Bernstine case as follows:
"To serve as a basis for prescription, the title need not be recorded. Registry is required only for transferring the property, and in the law of prescription the title does not operate to transfer the property, but merely to establish the good faith of the possessor and fix the limits of the possession."
The above principle was confirmed in Everett et al. v. Clayton et al., 211 La. 211, 29 So.2d 769, and has been somewhat recently reiterated in Thompson v. Webb, La. App. (1st Cir., 1956, writs denied), 91 So.2d 45.
The particular character of prescription asserted in the instant case is governed by rules, provisions and requirements established by LSA-C.C. Articles 3478 et seq.
In the instant case it is contended that Hunter has been in continuous possession of the property involved for a period of more than ten years. However, in order for this possession to be effective, it is required that the possession should have begun by acquisition in good faith and by just titleLSA-C.C. Article 3478. Following codal articles set forth the conditions necessary for good faith prescriptionArticle 3479; the definition of a just titleArticle 3483; the additional requisites of titleArticle 3486; and the necessary attributes of possession Article 3487.
Summarizing the requirements prescribed in the above articles with relation to the facts of the instant case, it is essential, for the purpose of sustaining the plea of prescription, that the defendants claiming under such plea prove that they acquired a legal and transferable title in the possessor, which title must be valid and certain in point of form, and that possession must have begun by the possessor in the capacity of owner.
We are convinced that the above requirements have not been established. The only title with respect to the streets and alleys in Central Plaza Subdivision involved in this case, under which Hunter could have entered into possession, was the ordinance of revocation adopted by the Town of Bossier City in 1936. The effect of this ordinance would have been to reinvest Hunter with title to the areas designated as streets and alleys theretofore dedicated by the filing of the subdivision plat in 1931. The record before us fails to indicate the slightest evidentiary showing that Hunter had knowledge of the revocation of 1936. On the contrary, it is convincingly established that Hunter did not rely upon the effect of this revocation as establishing a just title which was valid, certain and enforceable. This conclusion is supported by numerous facts, some of which we have above related; the uncertainty of Hunter as to its ownership of the entire tract, evidenced by the recitals of the lease to Burnham; the proposal of Hunter's representatives which resulted in the adoption of the invalid Police Jury Ordinance 201 of 1950 purporting to revoke the dedication of all streets and alleys in Central Plaza Subdivision not included in Ordinance 45 of 1936; the procurement by request of the abutting property owners, of whom Hunter must have been one if not the only one, of the enactment of Ordinance 585 of 1956 by the City of Bossier City purporting to abandon and revoke the dedication of all streets and alleys in Central Plaza Subdivision. In addition to the above facts which we regard as most significantthe record shows that Hunter, and the other defendants who availed themselves of his plea of prescription, were completely unaware of the Bossier City Ordinance of 1936 until after this Ordinance had been asserted in the answer of the defendant municipality in this suit.
We think it is conclusively established that the existence of the revocation Ordinance of 1936 by the Town of Bossier City *108 was unknown to all of the parties involved in this suit until after the institution thereof. Under this circumstance, we cannot conceive how Hunter could be considered to have re-entered into possession of the streets and alleys in the year 1936 as owner under a just title. This being true, it follows that Hunter's possession from 1936 to the date of institution of this suit in 1954 could not be construed as possession as owner. It follows that the plea of prescription was properly rejected.
There remains for disposition the dispute as to the property described as Tract 6 embracing a portion of the Coushatta paved highway. With reference to this property the defendant, Weber, cannot avail himself of the claim that he was a purchaser relying upon the faith of the public records, inasmuch as the records disclose that this particular tract had been conveyed in the year 1926 by Hunter to the Parish of Bossier. However, Weber urges that this conveyance transferred only a right-of-way or servitude, according to its provisions, for use in the construction and maintenance of a public road, and, as a consequence, the title to the fee, including the minerals, remained vested in Hunter. With this conclusion we are in full agreement, but it is further urged on behalf of Weber that this portion of the Coushatta Highway was included in the plat of Central Plaza Subdivision as filed and recorded in 1931. Our interpretation of the plat does not accord with this conclusion. While it is true that this portion of the Coushatta Highway is shown on the plat, it is not shown as being embraced within the subdivision. There was no necessity for the inclusion of the highway within the limits of the subdivision, since it is clear from the plat that it formed no part thereof and its conveyance for and use as a public highway had been effected many years prior to the establishment of the subdivision. Reference to the plat convinces us that the northeastern limit of the subdivision, as laid out and represented by the plat, was the southerly right-of-way of the Coushatta Highway. Under this firm impression, we can find no error in that part of the judgment which recognized the title of Hunter and his lessees to the property described as Tract 6.
Finally, there remains for attention the allocation of the cost of drilling, completing and operating the well which is producing from the unitized tract. Weber contends that he is not obligated for any portion of these costs since Burnham was in bad faith in drilling said well, knowing that he did not hold a lease on the streets and alleys lying within the tracts described in this suit. We think this question has been answered adversely to Weber's contention in Huckabay et al. v. Texas Company, 227 La. 191, 78 So.2d 829. The identical contention was made as against the Texas Company in the cited case. The opinion of Mr. Chief Justice Fournet squarely held that while the right of an owner to refrain from exercising his right of ownership is absolute, he is nevertheless, precluded from the enjoyment of profits without participation in the expenses incurred in the production of such profits.
For the reasons assigned, the judgment appealed from is affirmed in all respects, and, in accordance with statutory requirement, is re-stated with respect to the provisions affecting the parties to this appeal, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein as follows:
As to Tract 3, described as:
All streets and alleys situated in Northwest Quarter of Northwest Quarter (NW¼ of NW¼), Section Thirty-Three (33), Township Eighteen (18) North, Range Thirteen (13) West, as shown by plat of Central Plaza, said plat being recorded in Conveyance Book 60, page 357, Records of Bossier Parish, Louisiana, containing 10.423 acres.
There is judgment in favor of the Hunter Company, Inc., and against the Town of *109 Bossier City, Louisiana, recognizing the said Hunter Company, Inc., as the owner of said property and as such entitled to all royalties and benefits under that certain Oil and Gas Lease held by Emile Weber described in the paragraph next below.
There is judgment in favor of Emile Weber and against the Hunter Company, Inc., Mrs. Winifred C. Browning, Joe M. Burnham, M. Ascher, Retsal Drilling Company, Inc., Mace Naylor, N. R. Royall, Jr., Mrs. Frances K. Royall, John R. Royall, Mrs. Fannie May Royall, N. R. Royall, Jr., Trustee, N. R. Royall, III, Mrs. Dorothy S. Primm, Tucker K. Royall, recognizing the validity of that certain Oil and Gas Lease executed by the State Mineral Board of Louisiana for the Town of Bossier City, Louisiana, in favor of the said Emile Weber on May 11, 1951, said lease being recorded in the Conveyance Records of Bossier Parish, Louisiana, under Registry No. 82928, insofar as said Oil and Gas Lease affects the above described property.
As to Tract 5, described as follows:
Those streets in Northeast Quarter of Northwest Quarter (NE¼ of NW¼) situated in Central Plaza, as per plat recorded in Conveyance Book 60, page 357, Records of Bossier Parish, Louisiana, described as that portion of Walker Avenue lying between the intersection of said Avenue and Dartmouth Street to the intersection of Walker Avenue and Lee Avenue, those portions of Harvard, Princeton, Columbia and Centenary Streets between Walker Avenue and the Coushatta Highway, those portions of Bonn Street, Giddens Avenue, Cambridge Street and Tulane Street lying between Walker Avenue and East Side Gardens Subdivision, and Yale Street from the Coushatta Highway to the State Levee, containing 3.734 acres.
There is judgment in favor of the Town of Bossier City, Louisiana, and against the Hunter Company, Inc., recognizing the said Town of Bossier City, Louisiana, as the owner of said property and as such entitled to all royalties and benefits under that certain Oil and Gas Lease held by Emile Weber described in the paragraph next below.
There is judgment in favor of Emile Weber and against the Hunter Company, Inc., Mrs. Winifred C. Browning, Joe M. Burnham, M. Ascher, Retsal Drilling Company, Inc., Mace Naylor, N. R. Royall, Jr., Mrs. Frances K. Royall, John R. Royall, Mrs. Fannie May Royall, N. R. Royall, Jr., Trustee, N. R. Royall, III, Mrs. Dorothy S. Primm and Tucker K. Royall, recognizing the validity of that certain Oil and Gas Lease executed by the State Mineral Board of Louisiana for the Town of Bossier City, Louisiana, in favor of the said Emile Weber on May 11, 1951, said Lease being recorded in the Conveyance Records of Bossier Parish, Louisiana, under Registry No. 82928, insofar as said Oil and Gas Lease affects the above described property.
As to Tract 6, described as follows:
That portion of Coushatta Paved Highway situated in Northeast Quarter of Northwest Quarter (NE ¼ of NW ¼), Section 33, Township 18 North, Range 13 West, as shown on Plat of Central Plaza, recorded in Conveyance Book 60, page 357, Records of Bossier Parish, Louisiana, containing 1.228 acres.
There is judgment in favor of the Hunter Company, Inc. and against the Town of Bossier City, Louisiana, and the Parish of Bossier, State of Louisiana, by and through the Police Jury of said Parish, recognizing the said Hunter Company, Inc., as the owner of said property above described and as such entitled to all royalties and benefits accruing under that certain Oil and Gas Lease granted by the Hunter Company, Inc., to Joe M. Burnham, et al., as described in the paragraph next below.
There is judgment in favor of Mrs. Winifred C. Browning, Joe M. Burnham, M. *110 Ascher, Retsal Drilling Company, Inc., Mace Naylor, N. R. Royall, Jr., Mrs. Frances K. Royall, John R. Royall, Mrs. Fannie May Royall, N. R. Royall, Jr., Trustee, N. R. Royall, III, Mrs. Dorothy S. Primm and Tucker K. Royall, and against Emile Weber recognizing the validity of that certain Oil and Gas Lease granted by the Hunter Company, Inc. to Joe M. Burnham, et al., on February 12, 1951, and recorded in the Conveyance Records of Bossier Parish, Louisiana, in Conveyance Book 224, at page 132, insofar as said Oil and Gas lease affects the above described property.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of drilling, completing and operating that certain oil and gas well designated The Hunter No. 1, located in the North Half of the Northwest Quarter (N ½ of NW ¼) of Section 33, Township 18 North, Range 13 West, Bossier Parish, Louisiana, for the period from the date of first operations through April 1, 1959, are fixed at the sum of ONE HUNDRED THOUSAND THREE HUNDRED TWENTY-NINE AND 66/100 ($100,329.66) DOLLARS, which costs have been paid by Mrs. Winifred C. Browning, Joe M. Burnham, M. Ascher, Retsal Drilling Company, Inc., Mace Naylor, N. R. Royall, Jr., Mrs. Frances K. Royall, John R. Royall, Mrs. Fannie May Royall, N. R. Royall, Jr., Trustee, N. R. Royall, III, Mrs. Dorothy S. Primm and Tucker K. Royall.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that .176963 of said costs are chargeable to Tracts 3 and 5, as hereinabove described, and that the said percentage of said costs is properly due and payable by Emile Weber, herein recognized as the owner of the Oil and Gas Lease affecting said tracts.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any distribution of the funds now held on deposit in this Court in this proceeding shall be made subject to the prior payment from said funds of said costs to the following persons, in the following proportions:

Joe M. Burnham 15/128
M. Ascher ¼
Retsal Drilling Company ¼
Mace Naylor 1/64
N. R. Royall, Jr. 12/256
Mrs. Frances K. Royall 1/32
John R. Royall 1/32
Mrs. Fannie May Royall 1/32
N. R. Royall, Jr., Trustee 1/32
N. R. Royall, III 1/32
Mrs. Dorothy S. Primm 1/256
Tucker K. Royall 1/32
Mrs. Winifred Crowe Browning 15/128

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that .176963 of operational costs subsequent to April 1, 1959, properly incurred for the production of oil and other mineral products from said well are properly chargeable against said Tracts 3 and 5 and the owner of the lease thereon, Emile Weber.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all funds now on deposit shall be, after payment of all costs of court, including the cost of this appeal, be distributed as follows:
1. To Emile Weber in the proportion of.176963/.203201 of said funds less.176963 of $100,329.66.
2. To the following persons, .026238/.203201 of said fund, plus .176963 of $100,329.66, in the following proportions:

Joe M. Burnham 15/128
M. Ascher ¼
Retsal Drilling Company ¼
Mace Naylor 1/64
N. R. Royall, Jr. 12/256
Mrs. Frances K. Royall 1/32
John R. Royall 1/32
Mrs. Fannie May Royall 1/32
N. R. Royall, Jr., Trustee 1/32
N. R. Royall, III 1/32
Mrs. Dorothy S. Primm 1/256
Tucker K. Royall 1/32
Mrs. Winifred Crowe 15/128
Browning

*111 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the persons above listed, being the owners of oil and gas leases, shall, from the fund herein distributed, make proper payment to their respective lessors, as herein recognized, of the royalties accruing under the said oil and gas leases.

On Application for Rehearing
PER CURIAM.
In application for rehearing, counsel for the Hunter Company, Inc. has pointed out an error in the judgment of the trial court which was not called to our attention on original hearing, and, therefore, was perpetuated in our decree. The error in question relates to that part of the judgment recognizing the City of Bossier City as the owner of the property described as Tract 5 and, therefore, entitled to all royalty payments under the lease to Emile M. Weber. By instrument dated June 21, 1957, and recorded August 1, 1958, in the Conveyance Records of Bossier Parish, the City of Bossier City conveyed to the Hunter Company, Inc. all of its interest in the minerals underlying said described property, which, however, did not specifically include the property designated under Tract 5.
In this court counsel for the City of Bossier City and for the Hunter Company, Inc. have filed a joint motion setting forth, inter alia, the fact that, after trial but prior to judgment in this case, the City of Bossier City and the Hunter Company, Inc. had settled all questions existing between them which were involved in this case.
The movers further asserted that the City of Bossier City no longer has any interest in the subject property, wherefore, the judgment should be corrected to recognize the Hunter Company, Inc. as the owner of the minerals described under Tract 5 and entitled to all royalties accrued and accruing under the effective lease thereupon.
In view of the above motion and for the purpose of correcting our judgment on original hearing, in accordance therewith,
IT IS ORDERED, ADJUDGED AND DECREED That the Hunter Company, Inc., be and it is recognized as the owner of the property described under Tract 5 and as such entitled to all royalties and benefits under that certain oil and gas lease held by Emile Weber.
The applications for rehearing are denied.